**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:10cv251**

| | | |
|---|---|---|
| **ANITA GADDY ALLEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | <u>**MEMORANDUM OF**</u> |
| | ) | <u>**DECISION AND ORDER**</u> |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 9] and the Defendant's Motion for Summary Judgment. [Doc. 13].

## I.    PROCEDURAL HISTORY

The Plaintiff Anita Allen filed applications for a period of disability and disability insurance benefits and for Supplemental Security Income on June 10, 2005 alleging that she became disabled as of December 2, 1999 (amended at hearing to July 1, 2004). [Transcript ("T.") 70]. The Plaintiff's applications were denied initially and on reconsideration. [T.54-56, 59-62]. A hearing was held before Administrative Law Judge ("ALJ") Ivar Avots on

July 16, 2008. [T. 593-629]. On November 4, 2008, the ALJ issued a partially favorable decision, denying the Plaintiff disability insurance benefits but allowing supplement security income on and after January 6, 2006. [T. 17-24]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 6-8]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than

2

creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's

physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.

## IV.   THE ALJ'S DECISION

Plaintiff was 54 years old at the time of her hearing and had a high school education. [T. 597].  She last worked in 1999 as a telemetry technician. [T. 602].  The Plaintiff's date last insured (DLI) was December 31, 2004.  [T. 19].  She claimed to be disabled by bipolar disorder, sleep apnea, fibromyalgia, and uncontrolled high blood pressure.  [T. 603-04].

The ALJ issued a decision partially favorable to the Plaintiff. Disability insurance benefits were denied, but supplement security income was allowed for the period beginning January 6, 2006. [T. 17-24]. Proceeding to the sequential evaluation, with regard to the period prior to January 6, 2006, the ALJ found that Plaintiff "meets the insured status requirements of the Act on December 31, 2004." [T. 19]. She had not engaged in substantial gainful activity since July 1, 2004, which was Plaintiff's amended onset date. [T. 19]. The ALJ then determined the following severe combination of impairments: hypertension, sleep apnea, fibromyalgia, depression and anxiety. The ALJ concluded that her impairments did not meet or equal a listing. [T. 19]. He found that Plaintiff had the residual functional capacity (RFC) to perform medium work, with occasional balancing and climbing of ladders, ropes and scaffolds, frequent climbing of ramps/stairs, and frequent stooping, kneeling, crouching and crawling, as well as being limited to simple, repetitive, routine tasks in a non-production environment, with a need to avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, dangerous machinery and heights. [T. 20]. She could not perform her past relevant work. [T. 22]. Considering her age, education, work experience and RFC, the ALJ found that there were jobs in significant numbers in the national economy

that she could perform. [Id.]. Accordingly, the ALJ concluded that the Plaintiff was not disabled prior to January 6, 2006. [T. 23].

## V. DISCUSSION

Plaintiff asserts one assignment of error. She complains that the ALJ improperly weighed medical opinion evidence in disregarding the opinions of Drs. Dubiel, Carraway, Belsky, Lanier, and Brown. Since the ALJ granted relief for the period beginning January 6, 2006, in order to demonstrate error, Plaintiff must demonstrate that the supposedly disregarded opinions showed greater limitations before that date than were found by the ALJ. For the reasons stated below, no error is found.

The burden of proof is on the Plaintiff to show disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1502; English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993). She can meet that burden through the findings and opinions of licensed health care providers about particular limitations that her impairments impose on work functions. SSR 06-03p. The ALJ must consider all such evidence, weighing it in the manner set out at 20 C.F.R. § 404.1527:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion: (1) Examining relationship; (2) Treatment

> relationship; (i) Length of the treatment relationship and the frequency of examination.(ii) Nature and extent of the treatment relationship.

20 C.F.R. § 404.1527(d).

Among the elements the ALJ may consider in weighing opinions are the supportability of the opinion through medical signs and laboratory findings, and the consistency of such opinion with the record as a whole. See 20 C.F.R. § 404.1527. Plaintiff apparently claims that the ALJ committed error by violating this standard in "disregarding" the opinion evidence from five physicians.

Plaintiff first asserts that the ALJ disregarded the findings of Dr. Barbara Dubiel, M.D. [Doc. 10 at 6]. Dr. Dubiel conducted a consultative physical evaluation of the Plaintiff for Disability Determination Services (DDS) on August 2, 2005. [T. 241-46]. She took a history from Plaintiff, noting therein that she was a "rather dramatic historian." She also noted that Plaintiff's history was not consistent. Plaintiff reported that when she abruptly lost use of her right arm in December 2003[1] that neurosurgeon Dr. Lary Schulhof did not recommend any treatment. Plaintiff, however, later changed her story to

---

[1] The report states that this incident was in December 2004, but also states that the follow up treatment was in April 2004. [T. 241]. Hence it appears that the intial even was actually in December 2003 rather than 2004.

indicate that Dr. Schulhof had prescribed Prednisone but she did not take it. [T. 241]. Plaintiff also contradicted herself with regard to her spinal injuries. In her Adult Disability Report she claimed that she had a back fracture, but she only told Dr. Dubiel of a cervical fracture. Dr. Dubiel's objective findings were mostly normal, other than difficulties with squatting and a slightly waddling gait. Dr. Dubiel determined that Plaintiff suffered from chronic neck pain, fibromyalgia, chronic daily headaches, severe hypertension with uncontrolled blood pressure, untreated sleep apnea, and patient-reported anemia and hypercholesterolemia. [T. 245]. Plaintiff's reporting inconsistencies, however, render Dr. Dubiel's report to be of limited value.

Nevertheless, contrary to Plaintiff's assertion, the ALJ *did* consider Dr. Dubiel's evaluation. He indicated his review of all the evidence. [T. 17]. Dr. Dubiel's evaluation is Exhibit 8F [T. 3, 241-46], and the ALJ cites to Exhibit 8F in his step three discussion about the severity of and limitations from fibromyalgia. [T. 21]. As such, Plaintiff is simply wrong in stating that the ALJ disregarded Dr. Dubiel's opinion.

Moreover, Plaintiff does not point to anything in Dr.Dubiel's report that suggests that she evaluated Plaintiff to have impairments of any greater severity than found by the ALJ, or any greater limitations than found by the

ALJ.  As such, Plaintiff has demonstrated no error with regard to the ALJ's treatment of Dr. Dubiel's opinion.

The next physician whose evidence Plaintiff contends was disregarded is Dr. Anthony Carroway, M.D.  He performed a consultative psychological examination of the Plaintiff on September 6, 2005 for DDS.  [T. 247-50].  His mental status exam described her as quite focused on her numerous alleged illnesses, having speech of "rather monotone quality," and no psychomotor agitation or retardation.  She displayed no frank thought disorder, and denied any hallucinations or delusions.  Her affect was bland and her mood somewhat chronically depressed.  He identified her as having moderate impairment of short term memory, task persistence, and stress tolerance.  He noted mild impairments in attention and concentration, and in understanding, retaining and performing instructions.

The ALJ specifically addressed Dr. Carraway's report and conclusions in his step four evaluation.  [T. 21].  That report did not set forth limitations more severe than moderate, and most of her limitations were identified as mild.  Plaintiff does not cite to any provision in Dr. Carroway's report wherein he found limitations which are more restrictive than the ALJ found for the

period before January 6, 2006.  As such, Plaintiff has failed to articulate any error in the ALJ's consideration of Dr. Carroway's report.

Plaintiff next claims that the ALJ disregarded the assessment of Dr. Corrine Belsky, M.D.  [Doc. 10 at 7].  Dr. Belskey treated Plaintiff on and after November 2005 [T. 374-83], and opined to her limitations by filling out a Psychiatric Review Technique (PRT) on the form promulgated by the Agency. [T. 384-96].

Dr. Belsky's PRT supports the finding of disability, indicating that she met Listings 12.02, 12.04, 12.06, and 12.08.  The document provides a full articulation of the diagnoses and findings therefor.  That, however, pertains only to the period beginning January 6, 2006, for which the ALJ found the Plaintiff to be disabled.  The PRT does not make findings or state any report by Plaintiff that suggests an onset date for such disability any earlier than January 6, 2006. [T. 384, 399].  Even if there were some finding in Dr. Belsky's report to support an earlier onset date, it would be of no consequence unless it were to precede her date last insured (DLI).  Dr. Belsky, however, did not initiate treatment of the Plaintiff until eleven months after Plaintiff's DLI. [T. 374].  There is nothing in Dr. Belsky's report to support a determination of disability with an onset before Plaintiff's DLI.

The ALJ found Plaintiff to be disabled beginning on January 6, 2006, largely based on Dr. Belsky's findings. [T.21]. It appears that the ALJ adopted Dr. Belsky's report for the purposes for which it was offered. The Court cannot discern what Plaintiff believes the ALJ should have done regarding Dr. Belsky's findings that he did not. Plaintiff's assertion that the ALJ "disregarded" Dr. Belsky's assessment [Doc. 10 at 7] is simply belied by the record. The ALJ's treatment of Dr. Belsky's report was not in error.

Again reciting a litany of diagnoses without indicating any disabling limitations therefrom, Plaintiff complains that the ALJ erred in disregarding the opinion of Joseph H. Lanier, Ph.D. [Doc. 10 at 8-9]. Dr. Lanier performed a one-time evaluation of the Plaintiff on June 17, 2008, more than three years after Plaintiff's DLI. Nothing in the extensive report sets forth information about the history and development of Plaintiff's symptoms or the few relevant limitations therein described.[2] He asserted an onset date of "1998" without any indication as to the basis therefor. [T. 493]. In part because of this sort of deference, the ALJ characterized Dr. Lanier's report (Exhibit 22F) as "sympathetic." [T. 21].

---

[2] Dr. Lanier geared his report to address a somewhat different question than the ALJ was answering with his decision: He was asked to evaluate whether Plaintiff's psychological and neuropsychological states "adversely affect abilities required for maintaining an independent, productive personal, social or work life." [T. 466].

In order to meet her burden of proof, Plaintiff must demonstrate that her mental limitations were greater than that limiting her to simple, routine, repetitive tasks (SRRTs) prior to January 6, 2006. She argues that Dr. Lanier's report supports this conclusion; yet she points to nothing therein that does so. The opinion of a one-time evaluator, such as Dr. Lanier, is entitled to relatively little weight, especially when the key finding, the onset date, is not supported by any objective findings or the longitudinal record. The ALJ's finding that "[m]edical records prior to January 6, 2006 do not document significant physical or mental limitations" is supported by substantial evidence. [T. 20].

Finally, Plaintiff complains that the ALJ improperly disregarded the opinion of treating physician Dr. Michael A. Brown, M.D. Counsel mentions limitations that were noted in Dr. Brown's brief opinion. [Doc. 10 at 9; T. 588-92]. There is nothing in the record to show that this opinion applies to the period prior to January 6, 2006, and Plaintiff does not even argue that it does. Dr. Brown did not opine to an onset date, or provide objective findings to support the onset date claimed by Plaintiff. [T. 591-92]. In her brief Plaintiff does not even direct the Court to any evidence in the 140 pages of records from Dr. Brown wherein relevant findings supporting his opinion might be

found.  As such, Plaintiff has not shown that the ALJ disregarded Dr. Brown's opinion, or that there has been any error in the treatment of that opinion.  [T. 288-342, 494-587].

Lastly, the Court notes that Plaintiff's brief reflects that Plaintiff's counsel apparently misunderstands the nature of the proceeding in this Court.  While practice before the Agency is non-adversarial, practice before this Court is otherwise.  Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).  It requires each party's advocacy for specific positions.  Plaintiff's counsel has submitted a brief that articulates no specific assignments of error and cites to no statute, regulation or case law in support of what the Court may divine as his assignments of error.  He cited minimal specific, relevant factual evidence in support thereof.  The brief reads like a re-tooled factual argument ("jury argument") to the ALJ.  Counsel's apparent expectation is that the Court will fill in what counsel has failed to provide.  Particularly, counsel completely failed to address a significant element in this case, namely, the presence or absence of disabling limitations *prior to January 6, 2006*.  As such, Plaintiff's brief has been of little assistance to the Court in this appeal.  Counsel is encouraged to pay closer attention to the purpose of a Social

Security proceeding in this Court and what is necessary to prosecute such an appeal.

## VII.    CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied the correct legal standards, and that there is substantial evidence to support the ALJ's finding of no disability through the date of his decision.

### O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 13] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 22, 2011

Martin Reidinger
United States District Judge